UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FARHAD AZIMA,

                                        Petitioner,

                        -v.-

CITIBANK, N.A.,

                                        Respondent.

22 Misc. 72 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

Petitioner Farhad Azima seeks an order pursuant to 28 U.S.C. § 1782 authorizing him to subpoena banking records from Respondent Citibank, N.A. Petitioner contends that the records are relevant to his ongoing litigation in the High Court of Justice of England and Wales.  For the reasons set forth in the remainder of this Order, Petitioner's application is granted.

**BACKGROUND[1]**

In 2016, Petitioner was sued in a civil action in the High Court of Justice of England and Wales by the Ras Al Khaimah Investment Authority ("RAKIA") over a business dispute (the "UK Action").  (Holden Decl. ¶ 5).  Petitioner alleges that RAKIA's claim "relied on a substantial quantity of [his] hacked and stolen private and personal data." (*Id.*).  According to Petitioner, "RAKIA admitted that the materials were stolen but claimed to have obtained them innocently from sources on the internet."  (*Id.*).  In response to this breach of privacy, Petitioner

---

[1]     This Order draws its facts from the affidavit of Dominic Holden submitted in support of Petitioner's application.  (Dkt. #4-1 ("Holden Decl.")).  For ease of reference, the Court refers to Petitioner's memorandum of law in support of his application as "Pet. Br." (Dkt. #4).

filed a counterclaim in the UK Action, alleging that RAKIA and its agents were responsible for the hacking of his information and its subsequent publication. (*Id.*).  Petitioner's counterclaim was initially dismissed, but later reinstated following appeal.  (*Id.* at ¶¶ 7-8).  Petitioner has since amended his counterclaim to add additional defendants, "including RAKIA's outside counsel Dechert LLP, Dechert partner Neil Gerrard, RAKIA executive Jaime Buchanan, and Stuart Page, a private investigator."  (Pet. Br. 3; *see also* Holden Decl. ¶ 9).

The present application seeks banking records reflecting payments and communications allegedly made in connection with the hacking and subsequent use of Petitioner's personal information.  (Dkt. #3; *see also* Pet. Br. 4).  Petitioner states that the persons responsible for hacking and then using his information in the UK Action were paid to do so through accounts held with Respondent.  (Holden Decl. ¶ 27; *see also* Pet. Br. 4).  Petitioner thus seeks to issue a subpoena to Respondent for the responsible parties' banks records. (Holden Decl. ¶ 28; *see also id.*, Ex. F (copy of proposed subpoena)).

On April 21, 2022, the Court issued an order expressing its concern that Petitioner's proposed subpoena failed to impose meaningful limits on the scope of documents it sought from Respondent and thus swept too broadly.  (Dkt. #7).  The Court observed, in particular, that Petitioner had not limited his request to records associated with transactions between identifiable parties or placed any similar substantive limitations on the scope of the subpoena, and that the absence of such limitations created the possibility that the subpoena, if enforced, would require Respondent to produce an unbridled universe of

financial records.  (*Id.* at 2).  To assist it in determining whether the proposed
subpoena was overbroad, the Court ordered Petitioner to file either a letter
addressing the Court's concerns or a revised subpoena by April 28, 2022.  (*Id.*).

Petitioner filed a letter addressing the scope of his proposed subpoena,
and the feasibility of drafting a more circumscribed version of it, on April 28,
2022.  (Dkt. #8).  Petitioner explains in his letter that the records sought in the
proposed subpoena are related to an account that he believes "was created to
receive payments for hacking work performed by" its owner, Amit Forlit.  (*Id.* at
2).  This suggests, in Petitioner's words, that "[t]he total universe of bank
transactions contained in the subpoenaed account are likely limited to those
related to hacking activity."  (*Id.*).  Further, Petitioner states that the
counterclaim defendants in the UK action "went to great lengths to hide their
identities and mask payment," thus "making more narrow tailoring by using
search terms challenging."  (*Id.*).  Lastly, Petitioner represents that his counsel
contacted Respondent's relevant legal unit and was told that the proposed
subpoena "did not appear overly burdensome" but was encouraged to clarify
the date range of the documents sought in the subpoena.  (*Id.*).[2]  Based on
these observations, Petitioner renews his request for an order under Section

---

[2]    The proposed subpoena provides in a section titled "instructions" that "[u]nless
otherwise indicated, these Requests refer and relate to the time period of January 1,
2015 through the present."  (Holden Decl., Ex. F at 6).  The subpoena then requests
"[a]ll documents and communications related to Mr. Amit Forlit, SDC-Gadot LLC,
and/or Insight Analysis and Research LLC."  (*Id.* at 8).  Based on these provisions, the
Court understands Petitioner's subpoena to seek documents that were created between
January 1, 2015, and the present, and will grant Petitioner's application on the
condition that the parties adhere to that temporal limitation.

1782 and declares that he will work with Respondent "to ensure that any irrelevant and sensitive transactions are not produced." (*Id.*).

**LEGAL STANDARD**

Section 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made … upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). "The analysis of a district court hearing an application for discovery pursuant to [Section] 1782 proceeds in two steps." *Fed. Republic of Nigeria* v. *VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022). At the first step, the court must determine whether the applicant satisfies Section 1782's three statutory requirements: that "[i] the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, [ii] the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and [iii] the application is made by a foreign or international tribunal or any interested person." *Mees* v. *Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *accord Fed. Republic of Nigeria*, 27 F.4th at 148.

If the applicant meets the statutory requirements, the district court "may grant discovery under [Section] 1782 in its discretion." *Mees*, 793 F.3d at 297. The court must exercise its discretion "in light of the twin aims of the statute:

[i] 'providing efficient means of assistance to participants in international litigation in our federal courts and [ii] encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Schmitz* v. *Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) (quoting *In re Application of Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)). To evaluate whether granting an application would further Section 1782's aims, the court must consider four factors that the Supreme Court set forth in *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). *See Fed. Republic of Nigeria*, 27 F.4th at 148. These four so-called "*Intel* factors" are:

> [i] whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for [Section] 1782(a) aid generally is not as apparent; [ii] the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; [iii] whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and [iv] whether the request is unduly intrusive or burdensome.

*Id.* (internal quotation marks omitted).

## DISCUSSION

At the outset, the Court finds that Petitioner's application satisfies Section 1782's three statutory requirements. *First*, the application seeks discovery from an entity that resides in the Southern District of New York. (*See* Holden Decl., Ex. B (Respondent's registration information)). *Second*, Petitioner seeks to use the discovery in an ongoing adversarial action pending before the

High Court of Justice of England and Wales.  (*See id.*, Ex. A (copy of Petitioner's counterclaim in the UK Action); *see also id.* at ¶¶ 26-28 (describing the intended use of the discovery)).  *Third*, Petitioner is a litigant in the UK Action and is therefore an "interested person" for purposes of Section 1782.  *See Intel*, 542 U.S. at 256 (remarking that "[n]o doubt litigants are included among … the 'interested person[s]' who may invoke [Section] 1782"); *see also In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176 (S.D.N.Y. 2020) (observing that "since Applicant is a litigant [in the foreign proceeding], it plainly is an interested person" within the meaning of Section 1782).

The Court further finds that the first three *Intel* factors weigh in favor of granting Petitioner's application.  *First*, Respondent is not a participant in the foreign proceeding.  (Holden Decl., Ex. A).  *Second*, the UK Action is an appropriate subject of judicial assistance because there is no indication that the High Court of Justice of England and Wales would not be receptive to discovery obtained through Section 1782.  *See Euromepa S.A.* v. *R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (stating that "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782").  *Third*, "nothing in the record suggests" that Petitioner is seeking to circumvent foreign proof-gathering restrictions or other policies. *See In re BNP Paribas Jersey Tr. Corp. Ltd.*, No. 18 Misc. 47 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018).

Lastly, based on the record now before it, the Court concludes that Petitioner's request comports with the fourth and final *Intel* factor. While Petitioner's proposed subpoena is facially broad (*see* Dkt. #7), Petitioner has adequately explained why additional limitations are not feasible or necessary in this case (*see* Dkt. #8). In particular, the Court credits Petitioner's argument that additional keyword or other substantive limitations are unnecessary because the subpoena is limited to records associated with accounts that were used solely for purposes that are relevant to the UK Action. (*See* Dkt. #8 at 2). The Court also accepts Petitioner's representation that such limitations may thwart his ability to uncover the full range of relevant evidence held by Respondent. (*Id.*). Separately, the Court notes that the subpoena is temporally limited to documents created in or after 2015. (*Id.*; *see also* Holden Decl., Ex. F at 6). Under these circumstances, the Court finds that the proposed subpoena is not "overbroad or unduly burdensome" when judged by the "familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. Accordingly, the Court finds that Petitioner's request comports with the *Intel* factors and is consistent with the twin purposes of Section 1782.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's application for judicial assistance pursuant to 28 U.S.C. § 1782. Consistent with his proposed subpoena and April 28, 2022 letter, Petitioner shall limit his request and subsequent search to documents that were created in or after January 1, 2015. (*See* Holden Decl., Ex. F at 6; Dkt. #8 at 2).

The Clerk of Court is directed to terminate the motion at docket entry 3 and to close this action for administrative purposes.  If Respondent or any other party files a motion to quash, the action shall automatically be reopened.

SO ORDERED.

Dated:   April 29, 2022
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge